IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PHILLIP W. DIBBLE and PATTY JO DIBBLE,

    Plaintiff,

vs.                                                                                                          No. CIV 15-1167 JB/KBM

WELLS FARGO BANK, NATIONAL
ASSOCIATION,

    Defendant.

**MEMORANDUM OPINION AND ORDER ADOPTING THE
CHIEF MAGISTRATE JUDGE'S PROPOSED FINDINGS AND
RECOMMENDED DISPOSITION**

**THIS MATTER** comes before the Court on: (i) the Chief Magistrate Judge's Proposed Findings and Recommended Disposition on Defendant's Motion to Dismiss, filed on August 29, 2016 (Doc. 19)("PFRD on Motion to Dismiss"); and (ii) the Plaintiff's Objection to the Proposed Findings and Recommended Disposition on Defendant's Motion to Dismiss, filed August 29, 2016 (Doc. 20)("Objections").  On December 28, 2016, the Court referred the case, pursuant to 28 U.S.C. § 636(b),  to the Honorable Karen B. Molzen, Chief Magistrate Judge for the United States District Court for the District of New Mexico, for a report and recommendation.  She issued the PFRD on Motion to Dismiss on December 19, 2016, recommending that the Court dismiss the Plaintiffs' claims for declaratory and injunctive relief for lack of subject-matter jurisdiction and that the Court dismiss their claims for damages under the Truth-in-Lending Act, 15 U.S.C. 1601-1667f ("TILA"), with prejudice for failure to state a claim.

Plaintiffs Phillip W. Dibble and Patty Jo Dibble filed a Complaint for Declaratory Judgment and for Restitution, on December 28, 2015.  See Complaint for Declaratory Judgment and for Restitution, filed December 28, 2015 (Doc. 1)("Complaint").  Therein, the Dibbles seek a

"declaratory judgment that [their] Mortgage . . . is terminated, released, void, and invalid." Complaint ¶ 21, at 4.  Additionally, they request "an emergency stay of all actions made or to be made by the Thirteenth Judicial District Court . . . in case no. D-1314-CV-2011-1059." Complaint ¶ 27, at 5.  The referenced state court action is a foreclosure action that Defendant Wells Fargo Bank, National Association, filed in 2011 against the Dibbles in state district court. Just as Chief Magistrate Judge Molzen took judicial notice of the Thirteenth Judicial District Court, County of Valencia, State of New Mexico's records in the underlying foreclosure action in her PFRD on Motion to Dismiss, the Court does the same on de novo review.  See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp., 605 F.2d 1169, 1172 (10th Cir. 1979)(reasoning that federal courts may take notice of proceedings in other courts when they have a direct relation to the matters before the court).

Considering the Defendant's Motion to Dismiss, filed February 1, 2016 (Doc. 11), and the Plaintiffs' Motion to Strike Defendant's Motion to Dismiss, filed February 11, 2016 (Doc. 13), which she construed as a response to the Motion to Dismiss, Chief Magistrate Judge Molzen concluded, first, that the Rooker-Feldman doctrine[1] applies to certain of the Dibbles' claims, because the determination they seek -- that is, that their mortgage is terminated or void after TILA rescission -- would necessarily disturb the state-court judgment of foreclosure.  See PFRD on Motion to Dismiss at 8.  Accordingly, she recommended dismissal of the Dibbles' claims for declaratory judgment and for a stay of the state courts' actions for lack of subject-matter jurisdiction.  See PFRD on Motion to Dismiss at 9.

---

[1]The Rooker-Feldman doctrine derives from two Supreme Court of the United States of America cases, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).  The United States Court of Appeals for the Tenth Circuit has held that the "*Rooker-Feldman* doctrine prohibits federal suits that amount to appeals of state-court judgments."  Bolden v. City of Topeka, Kan., 441 F.3d 1129, 1142-43 (10th Cir. 2006).

Second, with respect to the Dibbles' claim for damages, Chief Magistrate Judge Molzen concluded that, even viewing the Complaint's allegations in the light most favorable to the Dibbles, they were never entitled to a TILA right of rescission and that they therefore fail to state a plausible claim for damages under 15 U.S.C. § 1640(a).  See PFRD on Motion to Dismiss at 9-10.  Chief Magistrate Judge Molzen noted that 15 U.S.C. § 1635(e) exempts residential mortgage transactions from the right of rescission when the mortgage is obtained to acquire the property, see 15 U.S.C. §§1635(e) and 1602(x), and explained that the Dibbles have made no allegation that their mortgage was obtained for some reason other than to acquire the property, see PFRD on Motion to Dismiss at 10.  Further, she explained that a § 1635(a) right of rescission expires after three years and, thus, any right to rescission expired well before the Dibbles tried to exercise such a right.  See PFRD on Motion to Dismiss at 10 (explaining that the Dibbles' mortgage was dated July 6, 2007, but that their notice of rescission was sent on September 22, 2015, more than eight years later).

The Dibbles do not directly address Chief Magistrate Judge Molzen's application of the Rooker-Feldman doctrine to certain of their claims.  In her PFRD on the Dibbles' motion for a temporary restraining order, Chief Magistrate Judge Molzen recommended that the Court not grant the TRO because of the Younger[2] abstention doctrine and the Rooker-Feldman doctrine.  When the Court looked at the motion for the TRO, it saw continuing state activity, and thought

---

[2] Younger v. Harris, 401 U.S. 37 (1971).  For "Younger" abstention to be appropriate, the Tenth Circuit has ruled that three elements must be present: (i) interference with an ongoing state judicial proceeding; (ii) involvement of important state interests; and (iii) an adequate opportunity afforded in the state court proceedings to raise the federal claims.  See J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1291 (10th Cir. 1999)(citing Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982)); Sw. Air Ambulance, Inc. v. City of Las Cruces, 268 F.3d 1162, 1177-78 (10th Cir. 2001).  Where the criteria for Younger abstention are otherwise met, even if a party requests monetary damages, a federal court in the Tenth Circuit must abstain from adjudicating the entire case while state proceedings are ongoing.  See Braverman v. New Mexico, 2012 WL 5378290, at *21 (D.N.M. 2012)(Browning, J.).

that probably Younger -- not Rooker-Feldman would be the relevant standard for the motion.  On clearer examination of the state docket, the Court thinks its initial judgment about what abstention doctrine applied -- on the matter of the TRO -- was wrong.  It now thinks that the Rooker-Feldman doctrine -- not Younger -- bars the Dibbles' claim, because Younger requires ongoing state proceedings but Rooker-Feldman requires completed state action.  Compare 4 Am. Jur. 2d Appellate Review § 10, with 32A Am. Jur. 2d Federal Courts § 1082.  The Court previously reasoned that the doctrine was not implicated in this case.  See Memorandum Opinion and Order Adopting the Chief Magistrate Judge's Proposed Findings and Recommended Disposition 5, filed September 12, 2016 (Doc. 21)("MOO").  In their response to the Dibbles' objections, filed after the Court's determination that the doctrine was inapplicable, Wells Fargo reasserts its previous position that "*Rooker-Feldman* applies."  Wells Fargo Bank, N.A.'s Response to Plaintiffs' Objection to the Proposed Findings and Recommended Disposition on Defendant's Motion to Dismiss at 2, filed September 15, 2016 (Doc. 22).

In its MOO, the Court concluded that the Rooker-Feldman doctrine was not implicated, because state court proceedings were ongoing.  See MOO at 4 n.3.  As noted in that opinion, the United States Court of Appeals for the Tenth Circuit has clarified that "the *Rooker-Feldman* doctrine only applies to cases brought 'after the state proceedings have ended.'"  Guttman v. Khalsa, 446 F.3d at 1031-32 (holding that state court proceedings had not ended and that the Rooker-Feldman doctrine did not apply, where the plaintiff had petitioned for certiorari to the Supreme Court of New Mexico, but the appellate court had not yet acted before the plaintiff filed his federal action).  In making this clarification, the Tenth Circuit identified a case from the United States Court of Appeals for the First Circuit that "helpfully explained the situations where a judgment would be considered final for Rooker-Feldman purposes."  Guttman v. Khalsa, 446

F.3d at 1032 n.2 (referencing Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F.3d 17, 24 (1st Cir. 2005)).

In Federacion de Maestros de Puerto Rico, the First Circuit held that state proceedings have "ended" for purposes of the Rooker-Feldman doctrine in three situations: (i) when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved; (ii) the state action has reached a point where neither party seeks further action; or (iii) the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions remain. See 410 F.3d at 24-25. With respect to the third situation, the First Circuit explained that "*Rooker-Feldman* applies where the state proceeding has ended with respect to the issues that the federal plaintiff seeks to have reviewed in federal court, even if other matters remain to be litigated." Federacion de Maestros de Puerto Rico at 26.

The Dibbles appealed a denial of their motion to vacate the foreclosure judgment to the Court of Appeals of New Mexico, which issued a summary affirmance of the lower court's judgment. See Wells Fargo Bank, N.A. v. Dibble, No. 34,244 (N.M. Ct. App. May 28, 2015). There is no indication on the Court of Appeals of New Mexico's docket that the Dibbles petitioned for a writ of certiorari with the Supreme Court of New Mexico; nor have the Dibbles alleged that they sought a writ of certiorari. Following the mandate from the Court of Appeals of New Mexico, the Dibbles filed a post-judgment Emergency Motion to Vacate Writ of Assistance, Sale and Declare Judgment Void, which the state court also resolved in Wells Fargo's favor before the commencement of this federal action. See Wells Fargo Bank, N.A. v. Patty J. Dibble, Thirteenth Judicial District, State of New Mexico, D-1314-CV-201101059. That the Dibbles lost in state court is not in dispute; that loss is why they attempted to mount a

collateral attack in federal court days later.

Nevertheless, the state district court issued a writ of assistance on January 5, 2016, following the Dibbles' filing of the current federal action. This state court action complicated application of the Rooker-Feldman doctrine. A writ of assistance is "[a] writ to enforce a court's decree transferring real property, the title of which has been previously adjudicated." Writ of assistance, BLACK'S LAW DICTIONARY (10 ed. 2014), http://thelawdictionary.org/writ-of-assistance/ (last visited December 27, 2016). The issuance of the writ was the singular action that the state court took in the foreclosure case following the commencement of this federal action. According to the Dibbles, the state court already had "purposed to immediately issue a writ of assistance" at the time they filed their Complaint. Complaint ¶ 26, at 5. Under the circumstance, the Court concludes that the formal issuance of the writ of assistance was essentially a ministerial act[3] by the state court to enforce its previous adjudication of the foreclosure action's merits.

The Tenth Circuit's rationale in Mann v. Boatright, 477 F.3d 1140 (10th Cir. 2007), although not directly on point, provides some support for applying the Rooker-Feldman doctrine despite ongoing activity in the underlying state court case. There, the plaintiff filed a federal suit seeking to enjoin various orders that a state probate court issued, most importantly those appointing a guardian and conservator for her father. See 477 F.3d at 1145. The Tenth Circuit

---

[3]In District of Columbia Court of Appeals v. Feldman, 460 U.S. at 462, the Supreme Court of the United States of America noted a distinction between judicial, and administrative or ministerial proceedings. See 460 U.S. at 462. Insofar as a court's action "investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist," it is judicial in nature. 460 U.S. at 477. Insofar as a court's action "looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power," a court is acting legislatively or ministerially. 460 U.S. at 477. The Rooker-Feldman doctrine, the Supreme Court said, applies to judicial actions, but not to legislative or ministerial ones. See 460 U.S. at 479.

determined that the state probate proceedings became final for Rooker-Feldman purposes at the time that the state court granted petitions for guardianship and conservatorship, even though there would be ongoing activity in the state probate case, including, for instance, administrative filings. See 477 F.3d at 1146. In reaching this determination, the Tenth Circuit considered what constituted a final judgment of a state probate court under Colorado law, noting that the rules of finality were the same as those that governed other kinds of civil cases. See 477 F.3d at 1146-47.

This holding was not idiosyncratic; the Tenth Circuit repeatedly has held that the Rooker-Feldman doctrine applies when purely administrative or ministerial tasks ensue from a state-court judgment. For example, in Panos v. Supreme Court of Utah, 198 Fed. App'x 692 (10th Cir. 2006), in an opinion that then-Chief Judge Tacha wrote and Judges O'Brien and McConnell joined, the Tenth Circuit considered a § 1983 civil rights complaint against the Supreme Court of Utah, in which Panos, appearing pro se, asked the federal district court for declaratory and injunctive relief when a state court cited him with contempt of court and attempted to enforce the contempt order. See Panos v. Supreme Court of Utah, 2005 WL 3455112 (D. Utah 2005). The United States District Court for the District of Utah dismissed Panos' complaint for lack of subject-matter jurisdiction under Rooker-Feldman. See 2005 WL 3455112, at *4. Panos appealed to the Tenth Circuit, arguing that Rooker-Feldman was inapplicable, because a contempt citation is an administrative act and not a judicial act. See Panos v. Supreme Court of Utah, 198 Fed. App'x 692 (10th Cir. 2006). The Tenth Circuit disagreed, affirming the federal district court's reasoning behind application of the Rooker-Feldman doctrine. See Panos v. Supreme Court of Utah, 198 Fed. App'x at 692.

Under New Mexico law, there generally are two final, appealable orders in foreclosure

actions: the foreclosure decree and an order confirming the sale. See Speckner v. Riebold, 1974-NMSC-029, 523 P.2d 10 (1974). It is the foreclosure decree that "operates to foreclose the mortgage [and] declares the rights of the parties in the mortgaged premises." Speckner v. Riebold ¶ 2, 523 P.2d at 12. In Bank of America, N.A. v. Lipper, No. 32,469 (N.M. Ct. App. May 16, 2013)(unpublished), an opinion addressing the appeal of a writ of assistance, the Court of Appeals of New Mexico reasoned that a defendant subject to foreclosure who failed to appeal either the foreclosure decree or the subsequent order confirming the sale had "waived any arguments with respect to the merits of the underlying foreclosure and judicial sale." Bank of America, N.A. v. Lipper, No. 32,469 ¶ 3, at 2. In other words, even if a writ of assistance itself is appealable, the appellate court will not reconsider the merits of the foreclosure action absent a successful appeal of the foreclosure judgment.

While the Dibbles here, upon filing their Complaint, specifically sought to enjoin state officials from issuing their writ of assistance that followed days later, even this claim for injunctive relief turned upon the foreclosure judgment's validity. The Court of Appeals of New Mexico resolved the foreclosure's merits, however, when it affirmed the state district court's judgment in 2014 and then again when the state district court denied the Dibbles' post-judgment Motion to Vacate Writ of Assistance, Sale and Declare Judgment Void in late 2015.

Having now considered the underlying state court foreclosure action's procedural posture at this action's commencement, as well as the state court foreclosure's finality for purposes of the Rooker-Feldman doctrine, the Court concludes that the state court's foreclosure judgment was sufficiently final for application of the Rooker-Feldman doctrine to the Dibbles' declaratory judgment and injunctive claims. See Kraft v. JP Morgan Chase Bank, Nat'l Ass'n, 2010 WL 4869099, at *4 (D. Colo. 2010)(Blackburn, J.)(explaining that the Rooker-Feldman doctrine bars

claims for rescission of a mortgage loan under TILA so long as the state court already has finally approved the sale of real estate). Cf. Stratton v. Massachusetts, 2008 WL 4427203 (D. Mass. 2008)(Woodlock, J.)(reasoning that claims were subject to dismissal under the Rooker-Feldman doctrine so long as they turned on the "core state court judgments" in a domestic relations action, despite ongoing post-judgment state court proceedings). In the Court's view, the case seems to fit within the first of the situations that the First Circuit discussed in Federacion de Maestros de Puerto Rico -- that is, the highest state court in which review was available, or in which the plaintiffs sought review, affirmed the judgment below and nothing substantive was left to be resolved. See 410 F.3d 24. Additionally, at the filing of the Dibbles' federal Complaint, the state court foreclosure proceedings already had ended with respect to the issues over which the Dibbles now seek review in federal court -- that is, the foreclosure judgment's validity -- even if other matters, i.e. the formal issuance of the writ of assistance, remains in the state district court. Accordingly, the Court sees no sound reason to reject Chief Magistrate Judge Molzen's reasoning on the issue in the PFRD on Motion to Dismiss.

Turning to their Objections to the PFRD on Motion to Dismiss, the Court notes that the Dibbles maintain, not for the first time, that the Court has misapprehended their Complaint. See Objections at 1-2. Indeed, they contend that Chief Magistrate Judge Molzen has offered "a proposed disposition of issues not sought by the Plaintiffs." Objections at 2. More particularly, they insist that they do not seek a determination from the Court that TILA rescission occurred, explaining that TILA rescission is, after all, a "private," "non-judicial process." Objections at 1,3. The Dibbles even go so far as to suggest that the Court's determination invalidating the rescission of their mortgage would be a violation of their constitutional right to due process. See Objections at 5. Additionally, they submit that their state court foreclosure action, see Dibble v.

- 9 -

Wells Fargo Bank, National Association, D-1314-CV-201101059, has no effect on the present case or, as they put it, is not "an underlying case in this action." Objections at 2.

The Dibbles raise similar arguments, both in their response to Wells Fargo's Motion to Dismiss and in their Objections to Chief Magistrate Judge Molzen's Proposed Findings and Recommended Disposition, filed December 31, 2015 (Doc. 6)("PFRD"), which addressed the Dibbles' request for a temporary restraining order. PFRD at 1. Their Complaint's plain language contradict these allegations, as the Dibbles pray for "declaratory judgment that [their] Mortgage . . . is terminated, released, void, and invalid and likewise the obligation by the Note is terminated, released, void, and invalid," Complaint ¶ 21, at 4, and states that the "Plaintiff now seeks an emergency stay of all actions made or to be made by the Thirteenth Judicial District Court for Valencia County in the State of New Mexico in case no. D-1314-CV-2011-1059," Complaint ¶ 27, at 5.

In response to Chief Magistrate Judge Molzen's rationale that their notice of rescission was untimely, the Dibbles contend that the notice "was received under an allegation of timeliness" and, therefore, the "allegation must be taken as true until disputed." Objections at 3. They insist that it is Well Fargo's duty to "dispute timeliness," which they submit it failed to do within twenty days of its receipt. Objections at 3. As Chief Magistrate Judge Molzen explained, however, the Dibbles themselves asserted in their Complaint that they gave notice of rescission eight years after the loan's consummation. See Complaint ¶¶ 5-6, at 2; PFRD on Motion to Dismiss at 10. Thus, based on their Complaint's allegations alone, their attempted rescission failed to comport with 15 U.S.C. § 1635(f), which provides that the TILA rescission right "expire[s] three years after the date of consummation of the transaction." 15 U.S.C. § 1635(f). The Dibbles submit that Wells Fargo, by remaining silent for twenty days following the Dibbles'

attempted, albeit untimely, rescission, is now estopped from disputing the notice's timeliness. Objections at 3-4. They provide no applicable authority, however, supporting such a proposition, and the Court is not aware of any such authority.

The Dibbles refer to United States v. Tweel, 550 F.2d 297 (5th Cir. 1977), arguing that Wells Fargo, like the Internal Revenue Service ("IRS") agent in United States v. Tweel, "committed a sneaky and deliberate deception in order to deprive Plaintiff of his statutory rights to relief available under 15 U.S.C. § 1640 by concealing that they previously consented to rescission by their silence." Objections at 4. In United States v. Tweel, the defendant was convicted of tax evasion, making false statements in a tax return, and conspiring to defraud the United States by obstructing IRS functions. See 550 F.2d at 298. He appealed his convictions, and the United States Court of Appeals for the Fifth Circuit held that the IRS agent's failure to apprise the defendant of his investigation's criminal nature constituted deliberate deception by the government agent. See 550 F.2d at 298. Ultimately, the Fifth Circuit determined that records which the IRS agent microfilmed were obtained through an unreasonable search during which the agent gained consent by intentional misrepresentation. See 550 F.2d at 298. United States v. Tweel, however, a criminal case addressing the reasonableness of a government search under the Fourth Amendment, has no application in this case. Not only is the Fourth Amendment of the Constitution to the United States of America not implicated, but, even on the facts as alleged in the Dibbles' Complaint, there is no showing that Wells Fargo deliberately misrepresented anything to the Dibbles, through its silence or otherwise.

The Dibbles suggest that it is Wells Fargo's burden to present proof that it somehow disputed the notice of rescission. See Objections at 4. Moreover, the Dibbles insist that they should have the opportunity to "challenge standing, answer, seek discovery, bring evidence, and

establish the truth of the allegations." Objections at 5. The Dibbles misunderstand the case's posture, the parties' respective burdens, and rule 12(b)(6) of the Federal Rules of Civil Procedure.

Under rule 12(b)(6), a court may dismiss a complaint for a failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). The complaint's sufficiency is a question of law, and when considering a rule 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded factual allegations in the complaint, viewing those allegations in the light most favorable to the non-moving party, and drawing all reasonable inferences in the plaintiff's favor. See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006). To withstand a rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(internal citation omitted). If a plaintiff cannot nudge the claims "across the line from conceivable to plausible," the complaint must be dismissed. Ashcroft v. Iqbal, 556 U.S. at 680. Here, the Court agrees that, in light of the residential mortgage transaction exception and the three-year expiration of the TILA right of rescission, the Dibbles' claim for statutory damages is not facially plausible and that it should dismiss the claim for failure to state a claim upon which relief can be granted.

Having conducted a de novo review of the Dibbles' Complaint and Wells Fargo's Motion to Dismiss, as well as the Dibbles' Objections, the Court adopts Chief Magistrate Judge Molzen's findings and conclusions, and overrules the Dibbles' Objection.

**IT IS ORDERED** that: (i) the Chief Magistrate Judge's Proposed Findings and

Recommended Disposition, file August 10, 2016 (Doc. 19) is adopted; (ii) Defendant Wells Fargo's Motion to Dismiss, filed February 1, 2016 (Doc. 11), is granted; (iii) the Plaintiffs' Motion to Strike Defendant's Motion to Dismiss, filed February 11, 2016 (Doc. 13) is denied; (iv) the Plaintiffs' claims for declaratory and injunctive relief are dismissed without prejudice for lack of subject-matter jurisdiction; and (v) the Plaintiff's claims for damages under the Truth-in-Lending Act, 15 U.S.C. 1601-1667f, are dismissed with prejudice for failure to state a claim.

_____
UNITED STATES DISTRICT JUDGE

*Parties and counsel:*

Phillip W. Dibble
Patty Jo Dibble
Los Lunas, New Mexico

    *Plaintiffs pro se*

Allison Louise Gambill
Snell & Wilmer LLP
Denver, Colorado

-- and --

Sandra A. Brown
Snell & Wilmer LLP
Phoenix, Arizona

    *Attorneys for the Defendant*